410 A.2d 751
**COMMONWEALTH of Pennsylvania**

v.

**Gregory TATE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 10, 1979.

Decided Feb. 1, 1980.

A. Martin Herring, Philadelphia, for appellant.

Robert B. Lawler, Asst. Dist. Atty., Chief, Appeals Division, Lee M. Kaplan, Philadelphia, for appellant.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Gregory Tate, was convicted following a nonjury trial of murder of the second degree and sentenced to a prison term of seven to twenty years.[1] Although prior to imposition of sentence, appellant, through his attorney, waived his right to file post-verdict motions, he nonetheless filed a direct appeal to this court. Being unable to determine whether appellant had voluntarily, knowingly and intelligently waived his right to file post-verdict motions, we vacated the judgment of sentence and remanded the matter to the Court of Common Pleas for an evidentiary hearing on this issue. *Commonwealth v. Tate,* 464 Pa. 25, 346 A.2d 1 (1975).

Following the evidentiary hearing, the court below ruled that appellant had, in fact, effectuated a valid waiver. Pursuant to said ruling, the court reinstated the judgment of sentence. Again on appeal to this court, we held the court below erred in its ruling and we vacated the judgment of sentence and remanded the case with instructions that appellant be allowed to file post-verdict motions *nunc pro tunc. Commonwealth v. Tate,* 473 Pa. 478, 375 A.2d 341 (1977).

---

1. When the instant homicide was committed, the Penal Code of 1939 was in effect.

Post-verdict motions were filed, argued and thereafter denied. Appellant was sentenced to a prison term of seven to twenty years. This direct appeal followed.

The facts, according to a statement given by appellant, are as follows. At some time prior to the instant homicide, a drug dealer and rival gang member (known as "Candy") sold adulterated drugs to John J. Jones, a member of appellant's gang. Jones took the drugs and died as a result thereof. Shortly thereafter, members of Candy's gang fired gunshots at members of appellant's gang, including two of appellant's brothers. As a result, appellant and approximately twenty-five fellow gang members, armed with a rifle and a shotgun went to the corner of 34th Street and Haverford Avenue in Philadelphia to look for members of Candy's gang. When a Cadillac with Candy and others came down Haverford Avenue, numerous shots were fired at and from the moving vehicle. Appellant, armed with the rifle, fired one shot. The Cadillac sped down the street and out of sight.

Philadelphia police officers appeared on the scene almost immediately. Appellant and his fellow gang members scattered, appellant ran up a nearby alley, dropped the rifle and waited for the police to leave the scene. The police discovered the unconscious body of William Fuller, the victim and innocent bystander, lying on the sidewalk at the bus stop at 35th and Haverford. Fuller was taken to Presbyterian Hospital where he died within a few minutes of arrival. An autopsy revealed that the cause of death was a gunshot wound of the chest and left arm.

When the original officers on the scene left the scene to take the victim to the hospital, appellant and two other gang members went back to recover the rifle. Two other officers, cruising the area in an unmarked police car, saw appellant walking down the street carrying the rifle. When the trio saw the officers exit from their car, appellant dropped the rifle and each of the three ran in separate directions, Only one of appellant's confederates was caught at that time. Police did, however, recover the rifle and ballistics tests showed that the appellant's rifle fired the fatal shot.

When appellant obtained counsel to represent him in the instant matter, he was informed by said counsel that the Commonwealth had an excellent chance of proving that appellant had committed murder of the first degree. Because of this, counsel informed appellant of the likelihood that he would be sentenced to life imprisonment. Counsel thus informed appellant the best course of action would be to try to negotiate a plea bargain to a lesser degree of homicide.

Following negotiations with a representative of the District Attorney's office, counsel for appellant worked out a plea bargain whereby appellant would plead guilty to murder of the second degree with a recommended sentence of seven to twenty years. On January 17, 1974, appellant attempted to plead guilty pursuant to the negotiated plea. A full guilty plea colloquy was conducted and testimony establishing the factual basis for the plea was being taken when the trial court halted the proceedings. The court informed both attorneys that he believed the case was clearly murder of the first degree and as such, he could not accept the plea. Appellant was allowed to withdraw his plea and the case was sent back for assignment to another judge.

After counsel explained the situation to appellant, he told counsel he still wished to plead guilty. Appellant, his attorney and the Assistant District Attorney explained the situation to the calendar judge, who indicated a willingness to accept the plea. However, during a recitation of the facts, the calendar judge also refused to accept the plea because of his belief that the case was one of murder of the first degree. The calendar judge then assigned the case to yet a third judge.

Appellant and his attorney, now accompanied by the Chief of the Homicide Unit of the District Attorney's office, went to the courtroom of the third judge to whom the case had been assigned. The court, after hearing the circumstances and facts of the case, agreed to try the case non-jury if the Commonwealth would certify that the case rose no higher than murder of the second degree. It was further agreed

that the evidence would be admitted by way of stipulation. When counsel informed appellant of all of the foregoing, appellant was more than willing to be tried as agreed to by the court and the attorneys, since the outcome would give the same result as foreseen by the attempted guilty plea, thus allowing appellant to avoid a conviction for murder of the first degree.

The case was then called for trial. Appellant pleaded not guilty. A colloquy was then conducted whereby appellant waived his right to trial by jury. The Commonwealth then certified that the case rose no higher than murder of the second degree. Aside from appellant's confession,[2] which was read into evidence, all of the Commonwealth's evidence was admitted by way of stipulation. The Commonwealth rested. The defense then rested without presenting evidence. The following exchange between the court and appellant then occurred:

"Q. Mr. Tate, your lawyer, in agreement with the Commonwealth has put a lot of evidence on the record to what we call a stipulation. That means your lawyer agreed that it be read in the record, without the necessity of the witnesses taking the stand. And I understand the witnesses are present in Court. Now, do you have any objection to the procedure which we followed here?

"A. No.

"Q. *Because, as you know, you have the right to have those witnesses take the stand. Your lawyer has the right to cross-examine them and develop facts.* If you want to do it that way, that is your prerogative. Your counsel and the District Attorney apparently in the interest of conserving time have done it this way. And, as I say, if you object we can do it the other way. *You are satisfied with the way it has been done?*

"A. Yes.

2. Appellant filed a pre-trial motion to suppress his confession. Said motion, however, was denied.

"Q. You are satisfied that the stipulations were proper so far as you are concerned?

"Yes.

"THE COURT: All right."

(Emphasis added).

Appellant now advances two assertions of error. He first argues that the procedure employed was in fact a plea of guilty without the required colloquy to insure that the plea was voluntarily and intelligently entered. He further argues that he was deprived of his constitutional rights both to confront witnesses and to a fair and impartial trial.

■ We first note our disagreement with appellant's characterization of the instant procedure as a guilty plea proceeding. While the outcome of the instant trial had the same effect as the attempted guilty pleas would have had if the plea had been accepted, the instant procedure was simply not a guilty plea proceeding. As appellant tendered a plea of not guilty, there is no need to comply with the requirements of Pa.R.Crim.P. 319 and *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974).

This is not to say, however, that it is unnecessary to show that such constitutional rights as were waived in this case were done so in a knowing, intelligent and voluntary fashion. In *Commonwealth v. Davis,* 457 Pa. 194, 322 A.2d 103 (1974), this court was presented with a case where the defendant was convicted in a non-jury trial where all evidence introduced was done so by way of stipulation. This court characterized the waiver effectuated by the defendant in allowing the introduction of evidence by way of stipulation as a waiver of his right to confront witnesses as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. As we stated, "[I]n cases such as the instant one, the Commonwealth must show that appellant's decision to waive his valuable Sixth Amendment right to confront the Commonwealth's witnesses against him, was a knowing and understanding one." *Id.,* 457 Pa. at 198, 322 A.2d at 105.

■ In the instant case, the trial court conducted a colloquy with appellant, informing him of his right to cross-examine the Commonwealth witnesses who could have testified against him. Having been so informed, appellant waived his right to confront witnesses and indicated that he was willing to proceed by stipulating to the evidence against him. The instant record thus shows that appellant voluntarily and intelligently waived both his right to trial by jury and his right to confront witnesses, the preceding being the only Constitutional rights waived in the instant proceeding. Thus, while appellant argues that he was deprived of his right to confront witnesses, no such deprivation existed, as appellant voluntarily and intelligently waived said right.

■ Appellant finally argues that he was denied the right to a fair and impartial trial. We believe this claim is frivolous. As appellant's trial counsel testified at the evidentiary hearing, appellant was "quite happy" to proceed by way of stipulation in order to avoid a probable life sentence.

Judgment of sentence affirmed.